## Baker's Appeal.
## Barge's Appeal.
## Appeal of the Academy of Music.

The charter of a corporation to erect and maintain a building for dramatic and operatic performances, provided that every five shares of stock should entitle the holder to a free ticket of admission, and that the directors should set apart a portion of the house for the exclusive use of such stockholders. Certain stockholders, holding large amounts of stock, from time to time made transfers of small lots thereof to other persons on the books of the company at the beginning of the dramatic season, with the understanding that the same stock was to be re-transferred at the end of the season. This was enforced by a delivery of the new stock certificate by the transferee to the transferer, together with an irrevocable power of attorney to re-transfer, the transferee retaining only the ticket of admission. A bill being filed by certain stockholders to restrain such transfers:

*Held,* that they were not warranted by the charter and should be enjoined, and that the costs should be imposed on the corporation which had permitted the transfers to be made.

January 27th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

APPEALS from the Court of Common Pleas, No. 3, of *Philadelphia County:* Of July Term, 1884, No. 47; January Term, 1885, No. 85; and July Term, 1884, No. 134.

Appeals of Alfred G. Baker, Benjamin F. Barge, and the American Academy of Music from a decree of the said Court, restraining the two first named appellants from making transfers of their stock in the corporation appellant for certain purposes.

Bill in equity, wherein Hartman Kuhn and others, stockholders of the American Academy of Music, were complainants, and the said American Academy of Music, Alfred G. Baker, Benjamin F. Barge, and others, stockholders therein, were defendants.

The bill averred that the original charter of incorporation of said corporation contained the following:—

"Section 9. That it shall and may be lawful for the said corporation to purchase and hold such real estate as they may deem necessary for the purposes of this Act, and to erect thereupon and furnish a building or buildings suitable for the representation of operatic and dramatic performances, and to lease the said building and appurtenances from time to time, to such person or persons as they may deem proper, for the purpose of giving such representations, or to employ or contract with persons for doing the same: *Provided,* That every

five shares of stock shall entitle the holder thereof to a perpetual, free, and transferable ticket of admission to all such representations, and a permanent seat in the house thereat; the said seat or seats to be located in any part of the house the said stockholder may choose, subject to such regulations as the directors may impose in relation thereto."

That subsequently by a supplement to said charter it was, *inter alia*, provided as follows:—

"That the proviso at the end of the ninth section of the said Act to which this is a supplement, be, and the same is hereby repealed, and in lieu thereof the following proviso is hereby enacted and declared to have the same force and effect as though the same had been inserted in the said Act before its passage, instead of the proviso hereby repealed, to wit: *Provided*, That every five shares of stock shall entitle the holder thereof to a free ticket of admission to all such representations, and the directors shall set apart, for the exclusive use of persons holding such number of shares, a portion of the house which they the said directors shall deem sufficient for the convenient accommodation of such holders."

That among the by-laws adopted by said corporation were the following:

"Section 1. One free ticket of admission for an operatic and dramatic representation shall be issued to each person holding five shares of the common stock of the corporation. Such free ticket shall be exhibited by the holder thereof, on entering the house, if required.

"Sec. 2. Every stockholder shall have free admission (so long as he holds his ticket) to all parts of the auditorium except the proscenium boxes. There shall be reserved for the accommodation of the stockholders retaining their tickets of admission such number of seats as the directors may deem sufficient, to which they alone shall have the privilege of entrance.

"Sec. 3. Any stockholder holding such ticket of admission may transfer the same to any other person, which transfer will entitle the transferee to admission to all parts of the auditorium, except the seats reserved for the stockholders and the proscenium boxes; but such ticket cannot be again transferred. All transfers shall be made on the books of the corporation.

"Sec. 4. Every stockholder who shall transfer his stock shall at the same time surrender the ticket issued in respect thereof (unless the same shall have been previously transferred on the books of the corporation), and a new ticket shall be issued to the party to whom said stock is transferred."

That certain stockholders, and particularly defendants Baker and Barge, had without authority of law been from time to

time selling and continued to sell their seats without the sale of their stock, and to accomplish this, merely colorable transfers of stock are made, by which the sellers retain the ownership of the stock, and the purchasers obtain the tickets only, entitling them to seats in the American Academy of Music; that is to say, the following method is pursued for the purpose: The owner of five shares of stock sells the seat to which as a stockholder he is entitled. Before or at the time of making a nominal transfer, he gets from the purchaser of the seat an irrevocable power of attorney to transfer all his right, title, and interest in any such stock of said American Academy of Music; with this power thus executed, the seller or his representative presents himself at the office of the Academy, makes a transfer of the stock to the purchaser of the seat, obtains certificate in said purchaser's name, also a ticket of admission entitling him to a seat. The certificate of stock and the power of attorney are retained by the seller, and the ticket of admission is delivered to the purchaser.

The bill alleged that such transfers were unlawful, but that the directors of the corporation had made no regulations prohibiting the same. That the complainants, holders of stock of the American Academy of Music, had not for some time received any dividends thereon, but that the only benefit and advantage which arise from their ownership of said stock is the privilege of a seat in the Academy of Music at dramatic and operatic entertainments and admission to concerts given there, which privilege is a personal one, and an incident to the ownership of stock. That the Board of Directors of said corporation defendant set apart for dramatic and operatic performances for the use of the stockholders, seven rows containing seats. That, taking into consideration sickness, absence from the city, and other causes detaining stockholders from attendance, the said seats are generally sufficient for the *bona fide* or real owners of the stock. That the sale of seats by means of the alleged sham transfers increases the number of occupants so that they frequently more than fill up the seats or space thus set apart for such *bona fide* or real owners of the stock, by reason whereof many of the *bona fide* stockholders have at times not been able to obtain seats, and that complainants have on occasions been excluded, in consequence of the seats being all occupied, and have been deprived of their seats during performances.

The complainants therefore prayed that said transfers be declared illegal, that the directors be ordered to make proper regulations to prohibit the same, and that defendants Baker and Barge be restrained by injunction from making such transfers.

The separate answers of the defendants admitted the facts set out in the bill, but denied that the transfers were illegal, or that the result was prejudicial to complainants and others.

The Examiner and Master (Edward Willard, Jr., Esq.), to whom the case was referred, reported the facts to be as follows:   (1) That a method has been resorted to for the purpose of disposing of tickets with stockholders' privileges attached, and that the certificates upon which the tickets issue, together with the powers of attorney, are retained by the sellers of the tickets; and where transfers are made simply for the purpose of selling tickets, such transfers are only colorable, and do not make the transferee a *bona fide* holder, entitling him to the privileges of a stockholder.   (2) That the sale to a limited extent of tickets with stockholders' privileges attached, began within a few years after the opening of the building; but that within the past few years, beginning at about the year 1879, the number of tickets put up for sale and sold has greatly increased, so much so that, for the season of 1881–82, over one hundred tickets were disposed of.   (3) That by reason of the sales made as before set forth, the privileges incidental to the ownership of stock in the Academy of Music have been impaired, and consequently an injury has resulted to the stockholders.

The Master reported a decree in accordance with the prayers of the bill.

Separate exceptions were filed thereto by the defendants Baker, Barge, and the Academy of Music.   After argument the court dismissed all the exceptions in the following opinion by YERKES, J.:—

The defendant company was incorporated by the Act of March 24th, 1852.   The ninth section of that Act contained this proviso, "That every five shares of stock shall entitle the holder thereof to a perpetual, free and transferable ticket of admission to all such representations, and a permanent seat in the house thereof, the said seat or seats to be located in any part of the house the said stockholder may choose, subject to such reasonable regulations as the directors may impose in relation thereto."   By the Act of May 4th, 1852, this proviso was repealed and another substituted, containing these words, "That every five shares of stock shall entitle the holder thereof to a free ticket of admission to all such representations, and the directors shall set apart for the exclusive use of persons holding such number of shares, a portion of the house which said directors shall deem sufficient for the convenient accommodation of such holders."

These quotations comprise all of the charter material to the decision of the questions raised in this case.   The Act of

12 OUTERBRIDGE.—33

March certainly provided for stockholders' tickets, which were to be transferable. And it is just as certain that the transferable character of such tickets was taken away by the Act of May. First, the word "transferable" is omitted, and instead of the said seat or seats to be located in any part of the house the said stockholders may "choose," we have in the later Act the words "and the directors shall set apart for the exclusive use of persons holding such number of shares, a portion of the house which the said directors shall deem sufficient for the convenient accommodation of such holders." The contest here is, who are entitled to the privilege of seats in the portion set apart by the directors? It must be conceded that this proviso confines it to holders of shares, but the difficulty is in determining who are holders of shares within the meaning of the charter.

The regulations of the Academy permit the issue of annual tickets to the persons whose names are on the stock-book as the owners of five shares each. The other defendants, owning many shares, transfer their stock in lots of five shares, and procure annual tickets in the names of their respective transferees. They take from the transferees, powers of attorney to transfer the stock, and deliver to them the annual tickets. Often the transferees do not see the certificates of stock and never have possession of them; they pay a consideration, but it is in no wise adequate for the stock, and it is simply a payment for a stockholder's seat or privilege to a seat. The transaction between the defendant and the transferees, stripped bare, is simply the sale of a seat. The transfer of stock is simply to give to such sale the similitude of a real transfer, so as to apparently comply with the law and regulation in order to procure the issue of a stockholder's ticket to the purchaser of a seat, without that purchaser becoming the owner of stock.

The slender hold that these transferees, or purchasers of annual tickets, have upon the stock, is shown by the seventeenth paragraph of the answers of the individual defendants. Each says, "I am the absolute owner of one hundred and twenty shares (this is Mr. Barge's answer; in Mr. Baker's answer the number is fixed at four hundred and twenty) of the stock of the corporation defendant, which is *clear and free of all incumbrance whatever*, some of which is temporarily in the names of various holders, and I own all of them for all the purposes and rights to which I am entitled under its charter." If this is so it is difficult to see to what the transferees have a right. Indeed the continuance of the privilege for which they have paid is only because of the grace of the defendants. Section 6 of the Act of 24th March, 1852 requires the transfer of stock upon power of attorney, and gives to the trans-

ferees the privileges of the former holders. It seems that this section would require the issue of a ticket to the transferee, notwithstanding there was a ticket outstanding. It is clear that the right to a seat could be destroyed by the exercise of the power, and it is probable that it could be conferred upon another.

Notwithstanding all this, it is contended the stock book is the only and conclusive evidence as to who are the holders of the stock. It does not seem proper that cases which relate only to the commercial aspect, of the status, the rights and liabilities of stockholders, should control here. For most purposes those cases establish that the stock book is the proper test as to who are stockholders. Before following such cases, we should inquire if there is anything in the nature and history of this corporation, and in the nature and reason of the privilege now in controversy, that will aid us. The proof establishes that the company was organized to provide a more convenient place for operatic and dramatic performances than then existed in the city; that the enterprise was not expected to be pecuniarily profitable, and that in fact it has not been. It is apparent that the object of the two provisos was to give something to those who invested their money independently of the remote chance of a dividend. It was one of the only two advantages that could accrue to stockholders beyond other citizens which could induce the investment of money, and if the original stockholders were gifted with prescience it was the only inducement. It was thus annexed to a substantial share in the enterprise. The exercise of such a privilege in a building is more consistent with the character of an owner than with any other.

The repeal of the proviso permitting transfers rebuts the idea that the privilege of admission can exist by itself. This repeal should be held a prohibition of anything that is in substance a mere transfer. To say that the transfers in question are sufficient to carry the privilege, would authorize weekly or daily transfers, carrying with them the rights to tickets, and precisely the state of affairs foreseen and provided against in the repeals would occur; that is, the admission of persons not interested in the enterprise and the crowding of the house. To provide adequate room for all such *stockholders*, if the practice became general, would make the Academy most undesirable to managers, and probably be fatal to its continuance as a place of amusement.

It certainly never was expected or intended that the privilege of admitting a stockholder could or should be turned into a means for making money. We hold:

1st, that the words "holders of shares" and "holder," in

the second section of the Act of May 4th, 1852, mean owners of stock and owner, and consequently that the privilege in question in confined to owners of stock.

2d, that the transactions complained of are merely transfers of seats and are unlawful.

The third exception filed on behalf of Mr. Baker, demands special attention. It points out the fact of the absence of any proof that the complainants were injured by the acts of the defendant. We suppose this has reference to the failure to prove that either of the complainants failed to get a seat because it was occupied by a transferee of the defendant. This ordinarily would be fatal to the bill; but it is here complained that the corporation defendant is violating its charter in permitting the other defendants to make colorable transfers of stock as a cover to the sale of stockholders' privilege. The power conferred upon us over corporations, we think, is a sufficient answer to this exception. A violation of a charter is an injury to every stockholder.

All the exceptions are dismissed, and the decree is made as reported by the Master.

The decree was as follows:

And now, April 22d, 1884, this cause heard upon bill, answers, proof and exceptions to the Master's report, it is ordered, adjudged and decreed that the exceptions to the Master's report be dismissed and the report confirmed, and that the privilege of a seat is a personal privilege incident to the ownership of five shares of stock, and that the ownership of more than five shares does not entitle such owner to any additional privileges in regard to seats; that any transfers on the books of the defendant corporation, by which nominal transfers are made to the purchasers of the seats, who then execute irrevocable powers of attorney, giving the seller the certificates, are not *bona fide* transfers, and the holders thereof are not such owners as are entitled to tickets of admission, with the privileges of a seat among those reserved for the stockholders; that it be further ordered, adjudged and decreed that they do make such reasonable and proper regulations as will in the future prevent the making of such transfers for the purpose of effecting the sale of seats only; and that it be further ordered and decreed that the defendants, Alfred G. Baker and Benjamin F. Barge, as stockholders, or either of them, be enjoined and restrained from making any transfers of stock to effect the sale of seats only; and be it further ordered that the costs in this proceeding be paid by the American Academy of Music, a defendant in this cause.

JAS. R. LUDLOW, P. J.

The several exceptants took separate appeals, each assigning for error, respectively, the dismissal of their said exceptions, and the above decree.

*Wayne MacVeagh* and *George W. Biddle* for the appellant Baker; *Joseph P. Gross* and *Henry Budd*, for the appellant Barge. The positions of the appellant may be briefly summed up thus:

*First.* The legal owner of stock is entitled to all the profits and benefits thereof, and to all the privileges therefrom arising absolutely, as against all the world, except as against the equitable owner, as to whom his rights are regulated by the equities existing between them, and which arise out of contract or otherwise. *Second.* The person in whose name stock stands upon the stock book of the corporation is the legal owner of stock. *Third.* The possession of a certificate and power of attorney to transfer stock gives to such possessor at best an equitable title, which is not recognizable, and should not be regarded, unless attention be specially called to it by the possessor. *Fourth.* When the certificate has been delivered to the person whose name is upon the stock book, with a power to transfer, and by the terms of the delivery such transfer is not to be made before a certain time, until such time arrive, both legal and equitable title are in the person whose name is upon the stock book. *Fifth.* Such being the general rule of law as to the ownership of stock in corporations, there is nothing in the charter of the American Academy of Music and the supplements thereto which render necessary or proper the application of a different rule to that corporation. *Sixth.* The evidence fails to show any injury to the appellees, or any one else, by reason of the transfers complained of.

It follows then that, inasmuch as the appellees have not shown such facts and reasons as entitle them to maintain their suit, or to have the relief prayed for, the decree of the court below should be reversed, and the bill in this cause dismissed with costs.

*George W. Biddle*, for the Academy of Music, appellant.—It is conceded by these appellants that costs in equity are discretionary, and not, like those at law, an incident of the judgment, but nevertheless they are not to be arbitrarily imposed. The question of who shall pay the costs in equity is often a matter of great importance, and courts are governed in awarding them by general fixed principles, among which may be mentioned three cases. *First.* Where the plaintiffs by laches have lost the right to costs. *Second.* Where a new point of law is involved, in which case the defendant will not

be charged except misconduct is shown. *Third.* Where the party benefited by the decree, even if successful, is charged with their payment.

It is urged that the appellants in this case fall within each of these categories: Anon., 2 Atk., 14; Lee *v.* Brown, 4 Ves. Jr., 362; Jones *v.* Wadsworth, 33 Leg. Int., 416; McMurray *v.* Davis, 1 W. N. C., 142; Morgan & Davey's Costs and Chancery, 76.

*Samuel Gustine Thompson,* for the appellees.

*John G. Johnson,* on behalf of intervening co-stockholders with the appellees, submitted a printed argument.

Mr. Justice GREEN delivered the opinion of the court, October 5th, 1885.

These are several appeals by different parties from the same decree, which, as they involved the same question, were heard together.

The learned counsel for the appellants have with much candor propounded the question for decision, as one which includes in it the fact of an understanding at the time of the transfer of the stock in question, that the same stock should be re-transferred at the close of the season, and that this was enforced by a delivery of the stock by the transferee to the transferer, together with an irrevocable power of attorney to make such transfer. It is as well, perhaps, to add, what is quite undisputed, that the ticket of admission for the season was to be delivered to the transferee, and retained by him, while the stock certificate was to be retained by the transferer from the beginning, in other words during the whole life of the contract. And on the other hand the stock was to stand ostensibly upon the books of the corporation in the name of the transferee. These considerations relieve the case of any inquiry as to the intent of the parties in making the transaction. The intent lies upon the surface and is practically averred in the statement of the question.

Beyond dispute the purpose, as well as the fact of the arrangement, was to clothe one person with a right to free admission to the Academy, and an apparent, not a real, ownership, of the shares essential to the existence of that right, and another person with the real ownership of the same stock at the same time.

So long as such an arrangement concerns nobody but the parties to it there is perhaps nothing to affect its legitimacy. But when the legal or equitable rights of others are affected, and the intervention of the courts is solicited, the question

arises how are they to treat the transaction.    According to its real or its seeming character?    According to the actual, or according to the apparent facts only, of the situation?    There are, it is true, exceptional times and occasions when even the tribunals adopt and act upon fictions.    But these are for benign and innocent purposes, rendered necessary by the due administration of justice.    In all other circumstances courts, whether of law or equity, must base their action upon the actual facts of the cases which come before them, so nearly as these can be ascertained.    In the case now before us there was perhaps a sufficiency of facts and of probable legal right to warrant the appellants in undertaking their transactions.    The peculiar character of the privilege which they sought to utilize was such that they might with perfect propriety avail themselves of it with pecuniary advantage, if practicable, without the least imputation of moral or social delinquency.    We see no occasion for the slightest intimation or belief of any dishonorable or fraudulent purpose on the part of the appellants in these transactions.    But we must deal with these according to their real facts.    It cannot be doubted that both at law and in equity the title to the shares in question was in the transferrers at all times.    They held the certificates of stock and they held also the executed powers of attorney for its transfer. The transferees had not purchased the stock.    No money was to be paid to them when the re-transfer was made upon the books.    They were to do nothing in order to complete the re-transfer.    That which they did buy, to wit, tickets of admission, they received, held and used.    They have no right, and did not and could not, under the contract, claim any right, to anything more than this.    They could not assert any ownership of any kind, legal or equitable, to the stock which the certificates represented.    Why then shall we treat them as owners or holders?    Because it is said the stock stood in their names on the books of the corporation.    But the whole effect of that fact is evidentiary only.    It is some evidence, *prima facie* evidence, of ownership.    But this *prima facies* sives way instantly to proof of the actual ownership.    As a mere technical fact it is of no avail against an opposing possession of the certificate, together with an executed power of attorney for its transfer.    The force of the fact of registry disappears, therefore, and is nugatory in the face of the other facts.    Of course there are circumstances in which the registered title is sufficient for certain purposes.    Upon it votes may be cast and dividends paid, and in special situations innocent purchasers may be protected.    But these cases are exceptional and do not in any degree affect the present.    Nor do we see how the understanding that the re-transfer shall not be made till the

end of the season can change the question of ownership. It is but a postponement of the time when the holder of the certificate may change the registered title from another to himself. It does not affect the actual title conferred by the real ownership of the stock, by the possession of the certificate, and by the executed and delivered power of attorney. It is but an agreement that the one *prima facie* fact of registry shall remain as it is, to wit, a *prima facie* fact only, during the stipulated period. After all has been said, and all theories exhibited and exhausted, we must fall back to the inquiry, who is the real, actual owner and holder of the stock, and to that question there can be but the one answer. For by the terms of the law which authorizes the issue of the tickets they can only be given to *holders* of stock. How can we possibly say that this means persons who seem to be holders, or who are apparently holders, or who possess one *indicium* of holdership? How can a court, construing the law, say it means anything else than actual, real, true holders? It is not possible in any view of the case. We are not dealing with a shadow but with a substance. This is not a controversy over possible rights acquired innocently under a deceptive appearance of title, or in spite of facts which an opposing party is estopped from asserting. On the contrary the parties dealt at arms length with their eyes open, and virtually attempted to create a position by means of which they could defeat the substance of a statute by a nominal adherence to its letter. Between themselves this might avail, and equity might refuse to hear either complaining of the other. But between them and others, strangers whose rights become implicated, the question is entirely different. These latter may stand upon their strictest rights, and may set up whatever obstacles are within their reach against interference with them. It seems to us that is this case. The plaintiffs are co-stockholders with the defendants of whose acts they complain. The Master has found, upon sufficient testimony, the fact of the injury in the manner described in the bill. It is not an injury which can be compensated in damages, it is continuing in its character, and it is the invasion, in fact at times the practical deprivation of a right. These considerations bring the case within equitable cognizance under well established rules. We quite agree with the Master and the learned court as to the propriety of the decree awarded, and therefore affirm it.

As to the question of costs we do not think they should be imposed upon the plaintiffs, who are successful in their suit, on the theory of laches. It is true the practice of issuing tickets of admission in similiar circumstances had long prevailed. But as it worked no practical injury to the plaintiffs

they were scarcely subjected to a duty to litigate for their rights. The practice only prevailed to an extent sufficient to affect the rights of the plaintiffs for two or three years before suit brought, and we do not think a delay during such a period of entering into litigation which most persons wisely dread, can be called laches. On the other hand the two principal defendants might well say that they did but follow an example which had been set and followed for a number of years without objection. Of course they might nevertheless incur the penalty of costs, but the discretion of the court below has imposed them upon the corporation, which at least sanctioned and participated in the objectionable practice, and we do not feel warranted in interfering with that discretion.

Decree affirmed and appeals dismissed at the cost of the appellants.